UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br>v.<br><br>OCTAVIO ALVAREZ RUELAS,<br><br>               Defendant. | NO: CR-10-6089-RMP-1<br><br>ORDER DENYING DEFENDANT'S MOTION TO SEVER |

Pending before the Court is Defendant Octavio Alvarez Ruelas' Motion to Sever, ECF No. 129. Oral argument occurred on April 19, 2011.

The Court has reviewed the Defendant's Motion, ECF No. 129, the Defendant's Memorandum in Support, ECF No. 130, the Government's Response, ECF No. 133, the Government's Trial Brief, ECF No. 146, and the Government's Supplemental Trial Brief, ECF No. 158.

**FACTS**

Defendants Octavio Ruelas and Efrain Flores were arrested after the vehicle they were in was stopped by state police on I-90 in Idaho. For several days prior to the stop, Ruelas and Flores had been under investigation. That investigation

ORDER DENYING DEFENDANT'S MOTION TO SEVER ~ 1

allegedly included controlled purchases of methamphetamine from both Ruelas and Flores by a confidential informant. The Defendants were also allegedly observed dropping off methamphetamine at a suspected drug house in Wyoming. After reports placed the Defendants in Pasco, officers observed them in the area for two days. Upon their leaving Pasco, officers decided to initiate the stop.

The stop was a "walled stop," where officers stopped the vehicle for some reason other than the underlying investigation. Upon stopping the vehicle, it was discovered that Ruelas had a suspended license. He was taken into custody for driving with a suspended license. In response to questions, Flores reportedly claimed ownership of a box of peppers in the vehicle. After Reulas was arrested, Flores was taken out of the vehicle, and the vehicle was searched. A search of the box of peppers revealed a package suspected of containing drugs. Flores denied knowledge of any drugs but reaffirmed his ownership of the box of peppers.

## APPLICABLE LAW

The applicable rule governing severance of codefendants reads: "If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendant's trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). However, "'Joinder is the rule rather than the exception.'" *United States v. Whitworth*, 856 F.2d 1268, 1277 (9th Cir. 1988) (quoting *United States v.*

ORDER DENYING DEFENDANT'S MOTION TO SEVER ~ 2

*Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980)). "[S]everance may be ordered when it appears that a defendant may be significantly prejudiced by a joint trial with his codefendants." *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980). The ultimate inquiry is whether the risk of prejudice outweighs the dominant concern with judicial economy. *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir. 1976).

The Ninth Circuit has identified factors for use in reviewing a district court's decision to sever including:

> (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether Appellants could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004). While phrased in the context of appellate review, these factors can provide guidance to a lower court in making the initial decision.

## DISCUSSION

The Defendant presents three arguments for severance: (1) the jury will be unable to compartmentalize the evidence presented against each defendant; (2) joinder will cause a violation of the Defendant's Sixth Amendment right to

ORDER DENYING DEFENDANT'S MOTION TO SEVER ~ 3

confront the witnesses against him; and (3) the codefendants' arguments are mutually antagonistic.

**The Jury's Ability to Collate and Appraise the Evidence Individually**

The Defendant argues that because this case "involves a complicated police investigation with many people involved," the jury will have difficulty compartmentalizing the evidence for use against each defendant. ECF No. 130 at 4. However, the Defendant does not provide specific examples of what makes this investigation particularly complicated. The evidence presented in this case's two suppression hearings has not suggested to the Court any particular complexity that would surpass the capabilities of a jury. While the Government's two trial briefs suggest that there will be a number of witnesses, the Court does not believe that the risk of prejudice from witness numerosity merits severance in this case. Accordingly, the Court rejects this argument for severance.

**Sixth Amendment**

The Defendant next argues that a joint trial will deprive the Defendant of his Sixth Amendment right to confrontation because Flores' statements claiming ownership of the box of peppers and denying knowledge of any drugs may be admissible against Flores in the joint trial, and the Defendant may not have an opportunity to cross-examine Flores.

ORDER DENYING DEFENDANT'S MOTION TO SEVER ~ 4

In *Bruton v. United States*, 391 U.S. 123, 124 (1968), the Supreme Court addressed the question of "whether the conviction of a defendant at a joint trial should be set aside although the jury was instructed that a codefendant's confession inculpating the defendant had to be disregarded in determining his guilt or innocence." In *Bruton*, the defendant, George Bruton, was implicated in the confession of his codefendant Evans. *Id.* at 124. Specifically, Evans told a postal inspector that he and Bruton had committed an armed robbery. *Id.* Evans and Bruton were jointly tried. *Id.* At trial, the court instructed the jury that it could not consider Evans' confession in its deliberations regarding Bruton. *Id.* at 124-25. Both Evans and Bruton were convicted. *Id.* at 124.

The Supreme Court reversed Bruton's conviction. *Id.* at 137. The Court recognized the weakness in limiting instructions with regard to such a confession. *Id.* at 128-30. The Court concluded that because Evans had no opportunity to cross examine Bruton, and the risk that the limiting instruction would be disregarded was high, admission of Evans' confession "posed a substantial threat to petitioner's right to confront the witnesses against him." *Id.* at 135-37. The Court also concluded that the benefits of joinder were outweighed by the threat to the defendant's confrontation right. *Id.* at 134-35 (quoting *People v. Fisher*, 149 N.Y. 419, 432 (1928)).

ORDER DENYING DEFENDANT'S MOTION TO SEVER ~ 5

The Supreme Court limited the holding of *Bruton* in *Richardson v. Marsh*, 481 U.S. 200 (1987). Clarissa Marsh was tried jointly with Benjamin Williams on charges of murder, robbery, and assault. *Id.* at 202. At their trial, Williams' confession was admitted over Marsh's objection. *Id.* at 203. The jury was instructed that it could not use Williams' confession against Marsh. *Id.* at 204. Furthermore, the confession was redacted to omit all reference to Marsh. *Id.* Indeed, the confession related only that Williams and a third person, Kareem Martin, drove to a house, robbed the house, and killed the occupants. *Id.* at 204 n.1. In her testimony, Marsh stated that she was in the car when Williams and Martin went to the victims' house and entered the house of the victims. *Id.* at 204.

On appeal, the court distinguished *Bruton*. The Court concluded that the "rule that juries are presumed to follow their instructions is a pragmatic one." *Id* at 211. While recognizing the prejudice that would flow from Williams' confession if the jury disregarded the limiting instruction, *id.* at 208 n.3, the Court concluded that where a confession is not "facially incriminating," the rule in *Bruton* does not apply and limiting instructions are sufficient protection against prejudice. *Id.* at 211.

The situation here is a far cry from the situation in *Bruton*. Flores' alleged statements regarding the peppers and drugs do not facially implicate Ruelas. Accordingly, the statements do not harbor the same sort of compelling risk as the

ORDER DENYING DEFENDANT'S MOTION TO SEVER ~ 6

confessions in *Bruton* and *Richardson*. Here, the Court concludes that a limiting instruction to the jury that it may not use Flores' statements against Ruelas will be sufficient to prevent deprivation of his Sixth Amendment right to confrontation.

**Mutually Antagonistic Defenses**

The Defendant next argues that Flores' and Ruelas' defenses are mutually antagonistic.

"Antagonism between defenses or the desire of one defendant to exculpate himself by inculpating a codefendant . . . is insufficient to require severance." *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996). "To be entitled to severance on the basis of mutually antagonistic defenses, a defendant must show that the core of the codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant." *Id.* (citing *United States v. Sherlock*, 962 F.2d 1349, 1363 (9th Cir. 1989)). In other words, "acquittal of one codefendant would necessarily call for the conviction of the other." *United States v. Tootick*, 952 F.2d 1078, 1081(9th Cir. 1991) (citing *United States v. Adler*, 879 F.2d 491, 497 (9th Cir. 1988)).

At this point, from the record produced at the evidentiary hearings, it appears that Flores will assert that he lacked knowledge of any drugs. While this may imply that the drugs were Ruelas', it is not an assertion that Ruelas possessed

ORDER DENYING DEFENDANT'S MOTION TO SEVER ~ 7

the drugs. Additionally, it is not clear that Ruelas' defense will consist of more than contesting that the Government has met its burden. It is conceivable that a jury could accept the defenses of both parties. At this time, the record does not reflect defenses that are mutually antagonistic.

## CONCLUSION

The defendant has established no basis for compelling severance. Therefore, the decision rests within the discretion of the Court. After balancing the interests involved, the Court concludes that severance is not warranted.

Accordingly, **IT IS HEREBY ORDERED**:

1. The Defendant's Motion to Sever (**Ct. Rec. 129**) is **DENIED**.

**IT IS SO ORDERED.**

The District Court Executive is directed to file this Order and provide copies to counsel.

**DATED** this 2nd day of May, 2011.

                            *s/ Rosanna Malouf Peterson*
                         ROSANNA MALOUF PETERSON
                        Chief United States District Court Judge